UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK GUSTAFSON; THE ESTATE OF MARILYN DESCHENEAU<br><br>     Plaintiff,<br><br>     vs.<br><br>STOTLER HAYES GROUP, LLC; SRC HARWICH LLC d/b/a WINGATE AT HARWICH; JOHN DOES I-X,<br><br>     Defendants. | Civil Action No.<br><br><br>**COMPLAINT AND JURY DEMAND** |

## JURISDICTION AND VENUE

**1.** Jurisdiction is appropriately laid in the United States District Court, District of Massachusetts under 28 USC §1331 as this claim is based upon a federal statute and federal question jurisdiction.

**2.** Venue is appropriately laid in the District Court of Massachusetts under 28 U.S.C. §1391(b)(2) as the events causing the claim occurred substantially within the State of Massachusetts.

## PARTIES

**3.** Plaintiff Mark Gustafson resides in South Chatham, Massachusetts.

**4.** Plaintiff, the Estate of Marilyn Descheneau is the estate of Ms. Descheneau who became deceased at the age of eighty-five on January 23, 2021. Ms. Descheneau resided in Massachusetts.

**5.** Defendant Stotler Hayes Group, LLC ("SHG") is a law firm that regularly engages in debt collection activity and/or debt collection related litigation. SHG maintains its principal office at 10517 Ocean Hwy Unit 4-27 Pawleys Island, South Carolina, 29585.

**6.**     Defendant SRC Harwich LLC d/b/a Wingate at Harwich ("Wingate") is an in patient facility providing short-term rehab and long-term care primarily for elderly patients.  Wingate is located at 111 Headwaters Drive Harwich, Massachusetts 02645.

<u>COMMON FACTUAL ALLEGATIONS</u>

**7.**     Plaintiff Mark Gustafson is the son of Marilyn Descheneau.

**8.**     On January 23, 2021, Ms. Deschenau became deceased.  She was 85 years old at the time of death.

**9.**     On or about February 10, 2020, Ms. Descheneau was admitted to Cape Cod Hospital.

**10.**     From that day forward, until she passed away, Ms. Descheneau was deprived of visiting with family and friends.

**11.**     On or about February 13, 2021, Ms. Descheneau was discharged from Cape Cod Hospital and admitted to Wingate for short-term physical rehabilitation services.

**12.**     Prior to her admission to Wingate, Ms. Descheneau had been suffering from dementia and receiving regular in-home health care and meal services.

**13.**     As a result of her dementia, Ms. Descheneau was no longer making financial and/or medical decisions without assistance of her power of attorney and health care proxy.

**14.**     At the time of Ms. Descheneau's admission to Wingate, Mr. Gustafson had power of attorney for Ms. Descheneau's financial and medical affairs.

**15.**     Ms. Descheneau did not sign documentation or otherwise agree to be responsible for long-term care costs at Wingate.

**16.**     Mr. Gustafson did not sign documentation or otherwise agree to be responsible for long-term care costs on Ms. Deschenau's behalf at Wingate.

17.     Shortly after admission to Wingate, Ms. Deschenau was assaulted by an employee of Wingate.

18.     The police were contacted and investigated the assault.  At the time this complaint is being filed, Plaintiffs have requested a copy of the police report but have not received a copy to provide further details and findings of the investigation.

19.     As a result of the Covid-19 pandemic, in or around March 2021, Wingate adopted quarantine procedures that strictly limited and/or prohibited visitation to resident patients.

20.     Mr. Gustafson asked Wingate to release Ms. Descheneau to his care following a quarantine period.

21.     Wingate refused to quarantine and release Ms. Descheneau.

22.     On or about May 25, 2020, Mr. Gustafson received notification that Ms. Deschenau contracted Covid-19 while in the care and custody of Wingate.

23.     On December 1, 2020, the debt collection law firm SHG provided Ms. Descheneau a debt collection letter by hand delivery, demanding payment of $108,109.13.  The letter was also sent to Mr. Gustafson by priority mail.  The letter states in part:

Dear Ms. Descheneau:

Our law firm, Stotler Hayes Group, LLC, has been retained as legal counsel for SRC Harwich, LLC d/b/a Wingate at Harwich ("Wingate"), the facility at which you reside and have resided since your admission on February 13, 2020.  As you are aware, there is currently an outstanding balance due to our client resulting from the care and services provided to you.  Our client has asked that we reach out to you and to try and resolve this matter.  **This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.**

The Fair Debt Collection Practices Act (FDCPA) requires that we provide you with the following notice of your rights:

*This communication is an attempt to collect a debt, and any information that you provide will be used for that purpose. Unless you notify us within thirty (30) days after receipt of this letter that you dispute the validity of this debt or any portion thereof, we will assume it is valid. If you notify us in writing within thirty (30) days after receipt of this notice that you dispute this debt or any portion thereof, we will obtain verification of the debt and mail the same to you.*

…………………

We demand that you satisfy the balance owed to Wingate for the cost of your room, board, care and services totaling $108,109.13 so that payment is received by no later than thirty (30) days following the date of your receipt of this letter. Should you fail to make payment within thirty (30) days, Wingate is prepared to initiate litigation. Please promptly remit payment, by bank check or money order, payable to Wingate at Harwich, by mailing the same to my attention at Stotler Hayes Group, LLC, 10517 Ocean Hwy., Unit 4-27, Pawleys Island, SC 29585.

24.     Attached to the December 1 letter as Exhibit A, was an alleged "Nursing Facility Admission Agreement" contract (hereinafter "contract") for Ms. Descheneau.

     a.  The contract is not signed by Ms. Descheneau.

     b.  The contract is not signed by Mr. Gustafson.

     c.  Mr. Gustafson did not authorize anyone to sign the contract on his behalf or on behalf of Ms. Descheneau.

     d.  Ms. Descheneau was not provided with a copy of the contract at the time of her admission to Wingate and was incapable of understanding the contract due to her dementia.

     e.  Mr. Gustafson was not provided a copy of the contract at the time Ms. Descheneau was admitted to Wingate.

     f.  On information and belief, the first time Mr. Gustafson received a copy of the contract was upon receipt of the December 1, 2020 letter.

4

g.  Someone other than Mr. Gustafson signed his name to the agreement with the notation "phone" and "responsible party."

h.  The contract contains designated areas for the signatory to execute their initials. Each place where initials are required on the contract was left blank/unsigned.

i.  The contract contains multiple signature lines which were left unsigned.

**25.**  SHG knew and/or should have known the information set forth in paragraph 24.

**26.**  Wingate knew and/or should have known the information set forth in paragraph 24.

**27.**  The contract defines "Responsible Party" as follows:

> *3.2 A Responsible Party* is an individual who voluntarily agrees to honor certain specified obligations of the Resident under this Agreement without incurring any personal financial liability, unless any of the statements or representations made herein are untrue. Examples of a Responsible Party include a relative or a friend of the Resident. We may not require a person to sign this Agreement as a Responsible Party unless the person has legal access to or physical control of the Resident's available income or resources to pay for the care and services we provide. We may decline to admit any Resident who has no source of payment for all or part of the Resident's stay.

**28.**  The contract is signed by Lindsey Allard "Admission Coordinator" employed by Wingate.

**29.**  A purpose of the December 1, 2020 letter from SHG was to induce Plaintiff's to pay a debt and/or comply with a contract they did not review, approve or sign.

**30.**  Accompanying the December 1 letter was an exhibit B itemized bill charging a daily rate of $384.73 for each day Ms. Descheneau was in the care and custody of Wingate.

**31.**  The letter caused anxiety, confusion and distress for the recipients.

**32.**  After receiving the letter, Mr. Gustafson was compelled to consult and retained legal counsel.

**33.**  On or about December 18, 2020, the law firm of Northeast Law Group, LLC ("NLG") sent and delivered two letters on behalf of Ms. Descheneau and Mr. Gustafson to SHG by facsimile and certified mail.  The certified mail was received by SHG on December 24, 2020.

**34.**     The first letter was sent in response to the December 1 SHG Fair Debt Collection Practices Act correspondence.  The letter states in part:

> I am in receipt of the letter dated December 1, 2020 which you sent to Ms. Descheneau and Mr. Gustafson demanding payment of $108,109.13.  A copy of the letter is enclosed for your reference.  Please be advised that my clients dispute the validity of the debt.  The alleged contract you produced with the December 1, 2020 letter is not signed by Ms. Descheneau or Mr. Gustafson.  Please provide copies of any and all records in your possession that may validate the debt.  This request is made pursuant to 15 U.S.C. §1692g of the Fair Debt Collection Practices Act.

**35.**     The second letter was sent as a demand pursuant to the Massachusetts Consumer Protection Act M.G.L. c. 93A §9.

**36.**     On December 22, 2020 a third letter was sent and delivered by NLG through facsimile and certified mail.  The December 22 demand letter was sent to Wingate through its attorneys SHG pursuant to the Massachusetts Consumer Protection Act M.G.L. c. 93A §9.

**37.**     As of the date this Complaint is filed, neither SHG or Wingate have responded to the M.G.L. c. 93A demand letters.

**38.**     As of the date this Complaint is filed, neither SHG or Wingate have made a good faith offer to resolve the dispute.

**39.**     On January 23, 2021, Ms. Descheneau died in the custody and care of Wingate.

**40.**     By letter dated March 10, 2021, SHG responded to the December 18, 2020 debt dispute letter sent pursuant to the Fair Debt Collection Practices Act.  The SHG letter states in part:

> Dear Attorney Deutsch:
>
> We are in receipt of your correspondence disputing the debt owed to SRC Harwich, LLC d/b/a Wingate at Harwich (hereinafter referred to as "Wingate") for the room, board, care and services provided by Wingate to Marilyn Descheneau (referred to herein as "Ms. Descheneau") and we are responding to provide you with validation of the debt. **This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose.**

6

Wingate is located at 111 Headwaters Drive, Harwich, MA 02645. The balance owed to Wingate for room, board, care and services it provided to Ms. Descheneau is $116,826.85. A Statement reflecting the balance owed is attached hereto as Exhibit A. Wingate is both the original and current owner of the debt.

Mark Gustafson entered into an Admission Agreement with Wingate on February 17, 2020 as Ms. Descheneau's Responsible Party. Pursuant the Admission Agreement, Mr. Gustafson agreed to use Ms. Descheneau's income and resources to pay Wingate for the room, board, care and services it provided to her. The balance in the amount of $116,826.85 is due and owing to Wingate for room, board, care and services it provided to Ms. Descheneau. We hereby demand payment of $116,826.85 to Wingate. Please deliver payment by certified check to Wingate as follows:

**Wingate at Harwich**
**111 Headwaters Drive**
**Harwich, MA 02645**

41.     Attached to the verification of debt letter is an Exhibit A consisting of an itemized bill charging $384.73 for each day Ms. Descheneau was in the care and custody of Wingate during 2020, and a daily rate of $396.26 for each day Ms. Descheneau was in the care and custody of Wingate during 2021.

42.     The communications from SHG infer and allege falsely that Mr. Gustafson is personally liable for the alleged debt.

43.     Following the death of Ms. Descheneau, Mr. Gustafson obtained a copy of Wingate's "Resident Face Sheet" identifying diagnoses of medical issues identified during her time in Wingate's care.

44.     The Residential Face Sheet discloses that while in the custody and care of Wingate, Ms. Descheneau was deemed to have suffered avoidable conditions including the following:

      a.   Contusion of left eyelid and periocular area;

      b.   Dehydration;

      c.   Fracture of nasal bones; and

      d.   Repeated falls.

45. The Residential Face Sheet further indicates that Ms. Descheneau was determined to have the following conditions:

      a.   Alzheimer's disease;

      b.   Mild cognitive impairment;

      c.   Unspecified dementia without behavioral disturbance; and

      d.   Cognitive communication deficit

46. The Resident Face Sheet identifies Mr. Gustafson as the emergency contact for Ms. Descheneau and correctly identifies his phone number, residential address and email address.

47. Wingate did not notify Mr. Gustafson of key incidents and diagnoses relating to Ms. Descheneau.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §1692 et Seq.

48. Plaintiffs repeat, reiterate, and incorporate by reference the allegations contained elsewhere in the pleading as if set forth fully herein.

49. Ms. Descheneau was a consumer as defined by the Fair Debt Collection Practices Act.

50. Mr. Gustafson is a consumer as defined by the Fair Debt Collection Practices Act.

51. Defendant SHG is a debt collector as defined by 15 U.S.C. §1692a(6) as the principal purpose of the business is the collection of debts and/or it regularly collects or attempts to collect debts owed or due to another.

52.     The debt SHG has attempted to collect is a debt as defined by the Fair Debt Collection Practices Act as it represents an alleged debt directly related to personal, family, or household purposes.

53.     Any right to relief incurred by Ms. Descheneau under the Fair Debt Collection Practices Act survives her death and now belongs to the Estate.

54.     The December 1, 2020 correspondence sent by SHG is a communication as defined by 15 U.S.C. §1692a(2).

55.     The March 10, 2021 correspondence sent by SHG is a communication as defined by 15 U.S.C. §1692a(2).

56.     SHG's December 1 and March 10 correspondence were made in connection with an attempt to collect a debt on behalf of Wingate.  Both letters state "This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose."

57.     SHG engaged in debt collection conduct that violates the Fair Debt Collection Practices Act.

58.     The December 1, 2020 SHG letter violated 15 U.S.C. §1692d by utilizing conduct the natural consequence of which is to harass, oppress or abuse any person in connection with a debt. Specifically, SHG caused the collection correspondence to be hand delivered to Ms. Descheneau who SHG knew or should have known was diagnosed with dementia and other medical conditions that required around the clock care.  SHG did this with knowledge that Ms. Descheneau maintained Mr. Gustafson as power of attorney and medical proxy.

59.     The December 1, 2020 SHG letter violated 15 U.S.C. §1692e in one or more of the following ways:

a. The letter contained false, deceptive and/or misleading representations in connection with the collection of a debt.

b. The letter made false representations of the character, amount or legal status of a debt in violation of §1692e(2).

c. The letter includes false representations or deceptive means to collect a debt in violation of §1692e(10).

60.    The December 1, 2020 SHG letter violated 15 U.S.C. §1692f in one or more of the following ways:

a. The letter sought collection of an amount not expressly authorized by an agreement executed by Ms. Descheneau and/or Mr. Gustafson in violation of §1692f(1).

b. The letter sought utilized unfair or unconscionable means to collect a debt wherein SHG caused the letter to be hand delivered to Ms. Descheneau who it knew or should have known was diagnosed with a person known to be diagnosed with dementia, requiring around the clock medical care, and had Mr. Gustafson designated as power of attorney and medical proxy.

61.    The March 10, 2021 SHG letter violated 15 U.S.C. §1692e in one or more of the following ways.

a. The letter contained false, deceptive and/or misleading representations in connection with the collection of a debt.

b. The letter made false representations of the character, amount or legal status of a debt in violation of §1692e(2).

    c.  The letter includes false representations or deceptive means to collect a debt in violation of §1692e(10).

62.    The March 10, 2021 SHG letter violated 15 U.S.C. §1692f in one or more of the following ways.

    a.  The letter sought collection of an amount not expressly authorized by an agreement executed by Ms. Descheneau and/or Mr. Gustafson in violation of §1692f(1).

63.    As a result of the conduct of SHG, Ms. Descheneau and Mr. Gustafson suffered damages including but not limited to anxiety, emotional distress, and economic loss.

64.    Plaintiffs are entitled to all relief available under 15 U.S.C. §1692k including but not limited to statutory damages, actual damages, attorney fees and costs of suit.

<u>COUNT II</u>

**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**

**M.G.L. c93A ET SEQ.**

65.    Plaintiffs repeat, reiterate, and incorporate by reference the allegations contained elsewhere in the pleading as if set forth fully herein.

66.    The Massachusetts Consumer Protection Act M.G.L. c93A prohibits the use of unfair and deceptive practices and acts in connection with the collection of debts.

67.    Code of Massachusetts Regulations 940 C.M.R c7 and 209 C.M.R. c18 provide specific regulations on the collections of debts.

68.    Pursuant to the regulations, SHG is a debt collector covered by the regulation.

69.    Mr. Gustafson and Ms. Descheneau are consumers covered by the statute.

**70.**    Defendant SHG violated the Massachusetts Consumer Protection Act by engaging in unfair and/or deceptive practices including but not limited to the following:

   a.    SHG made knowingly false or misleading representations in communications as to the character, extent or amount of the debt in violation of 940 C.M.R. 7.07(2).

   b.    SHG made false, deceptive, and/or misleading representations, communications or means in connection with the collection of a debt or to obtain information relating to Mr. Gustafson and/or Ms. Descheneau.

   c.    SHG sought the collection of money not owed by Mr. Gustafson and/or Ms. Deschenau in violation of 940 C.M.R. 7.07(16).

   d.    SHG failed to communicate the office hours of the creditor in written communications to Mr. Gustafson and Ms. Deschenau in violation of 940 C.M.R. 7.07(22).

   e.    SHG violated 209 CMR 18.14 by communicating directly with Ms. Deschenau at her home when she was known to be suffering from dementia and had a designated power of attorney

   f.    SHG violated 209 CMR 18.16 by making false or misleading representations of the debt including but not limited to the false allegations that Mr. Gustafson and/or Ms. Deschenau had agreed by contract to pay a sum certain for services rendered.

   g.    SHG violated 209 CMR 18.17 by seeking to collect amounts not owed by Mr. Gustafson and/or Ms. Deschenau

**71.**    SHG further violated the Massachusetts Consumer Protection Act by failing to register with the Secretary of State pursuant to M.G.L. c. 156D despite regularly performing business

including debt collection, in Massachusetts, and maintaining a physical presence in the state through at least three employee-attorneys.

72.    Pursuant to 940 C.M.R. c4.01, Wingate is a Long-Term Care Facility covered by the statute.

73.    Defendant Wingate violated the Massachusetts Consumer Protection Act by engaging in unfair and/or deceptive practices in violation of 940 C.M.R. 4.02 including but not limited to the following:

   a.  Wingate failed to inform Mr. Gustafson and/or Ms. Descheneau orally and in writing that the facility has written policies and subject of each policy.

   b.  Wingate failed to inform Mr. Gustafson and/or Ms. Descheneau that the Attorney General has promulgated regulations relating to the conduct of licensees and administrators, and failed to furnish a copy of 940 C.M.R. 4.00.

   c.  Wingate did not obtain or attempt to obtain written acknowledgments as required by 940 C.M.R. 4.02.

   d.  Wingate failed to make disclosures relating to the Massachusetts Medical Assistance Program as required by 940 C.M.R. 4.02.

74.    Defendant Wingate violated the Massachusetts Consumer Protection Act by engaging in unfair and/or deceptive acts or practices in violation of 940 M.G.L. 4.04 including but not limited to the following:

   a.  As evidenced by the alleged contract Wingate and SHG have provided, it was a condition of Wingate to require a third party guarantee of payment to the facility in order to be admitted or continue to stay at the facility.  This violates M.G.L. 4.04(1).

**75.**     Defendant Wingate violated the Massachusetts Consumer Protection Act by engaging in unfair and/or deceptive acts or practices in violation of 940 C.M.R.. 4.05 including but not limited to the following:

      a.   Wingate failed to inform Ms. Descheneau and/or Mr. Gustafson in writing at the time of admission to the facility, the information required by 940 C.M.R. 4.05(1)

      b.   Wingate increased the per diem rate for the care of Ms. Descheneau without first providing the required disclosures in the manner and form set forth in 940 C.M.R. 4.05(9).

**76.**     Wingate and SHG engaged in per se willful and knowing violations of M.G.L. c. 93A, §2.

**77.**     Defendants exhibited a pattern and practice of willful and knowing violations of M.G.L. c. 93A, §2 in relation to the Plaintiffs.

**78.**     In December 2020, SHG and Wingate each received demand letters by certified mail and facsimile pursuant to the Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act.

**79.**     The demand letters reasonably described the unfair and deceptive acts and practices taken by the Defendants and the injuries suffered by the Plaintiffs.

**80.**     The Defendants failed to offer a reasonable settlement of the Plaintiffs' claims.

**81.**     More than thirty days have passed since Defendants received the letters sent pursuant to M.G.L. ch. 93A.

**82.**     Defendants failure to grant Mr. Gustafson and the Estate of Ms. Descheneau relief upon demand was an act of bad faith made with knowledge or reason to know their acts and practices violated M.G.L. c. 93A, §2.

14

**83.**     Plaintiffs seek recovery for all damages suffered as a result of the Defendant's conduct in violation of M.G.L. c. 93A §2, including but not limited to the incursion of legal fees, suffering emotional distress, aggravation, and embarrassment.

**84.**     Plaintiffs further seek recovery of attorney fees and costs incurred in connection with this action, and judgment for such further relief as the court deems appropriate.

**85.**     Pursuant to the Massachusetts Consumer Protection Act, Plaintiffs seek application of the injury multiplier for damages suffered.

**86.**     Plaintiff seeks damages against each defendant in excess of $75,000.


## COUNT III

## DECLARATORY JUDGMENT

**87.**     Plaintiffs repeat, reiterate, and incorporate by reference the allegations contained elsewhere in the pleading as if set forth fully herein.

**88.**     In early 2020, Ms. Descheneau was transferred to the care of Wingate.

**89.**     Mr. Gustafson did not visit the Wingate facility at any time during Ms. Descheneau's stay.

**90.**     Wingate did not provide Mr. Gustafson with paperwork and written disclosures including but not limited to the alleged admissions contract.

**91.**     Mr. Gustafson did not review, sign or authorize someone else to sign his name to the admissions contract.

**92.**     The application of Mr. Gustafson's name as a guarantor and/or representative of Ms. Descheneau in accepting terms of the admissions contract was done without Mr. Gustafson's knowledge or consent.

93.     Prior to commencement of this lawsuit, Mr. Gustafson provided SHG and Wingate with supporting evidence that he did not sign the admissions contract nor grant his authority to be bound to the contract.

94.     Neither SHG nor Wingate responded to Mr. Gustafson with any records, information or evidence suggesting he received a copy of the admissions agreement and/or authorized his name to be signed to the contract as a guarantor by another person.

95.     Mr. Gustafson should not be personally liable for the cost of care provided to Ms. Deschenau.

96.     This Court has the authority to enter a Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgments Act, 28, U.S.C. §§2201-2202.

97.     Judgment should be entered in favor of Mr. Gustafson that he has no personal liability for the alleged debt incurred to Wingate as a result of services rendered to Ms. Descheneau.


**WHEREFORE**, PLAINTIFF demands:

    a.  Compensatory Damages

    b.  Punitive Damages

    c.  Statutory Damages

    d.  Restitution

    e.  Injunctive Relief

    f.  Attorney fees and costs

    g.  All other relief this Court determines to be just and fair.

Date: April 26, 2021                    */s/ Adam Deutsch*

Adam Deutsch, Esq., BBO 569173

P.O. Box 60717

Longmeadow, MA 01106

t. 413-285-3646

adam@northeastlawgroup.com